UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Sugely Flores, proposed administratrix of the Estate of the Infant, M.F., deceased et al.,

Plaintiffs,

-against-

The City of New York and National Railroad Passenger Corporation d/b/a Amtrak,

Defendants.

1:21-cv-05861 (RA) (SDA)

ORDER

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court is a Joint Letter Motion filed by Plaintiffs and Defendant National Railroad Passenger Corporation ("Amtrak" and, together with Plaintiffs, the "Settling Parties") to seal portions of Plaintiffs' Motion for Approval of Settlement and Judge Abrams' April 12, 2025 Memorandum Opinion and Order (ECF No. 91) referencing the settlement amounts (*i.e.*, gross settlement amount, individual distribution amounts and attorneys' fees) with respect to the settlement between Plaintiffs and Amtrak. (8/25/25 Jt. Ltr. Mot., ECF No. 95, at 1.) For the reasons set forth below, the Joint Letter Motion is GRANTED.

**BACKGROUND**

On July 1, 2025, the undersigned held a settlement conference in this case with all parties. (*See* 7/1/25 Minute Entry.) Following the conference, Plaintiff and Amtrak accepted the Court's mediator proposal to resolve Plaintiffs' claims against Amtrak.[1] On August 13, 2025, Judge

---

[1] Plaintiffs did not reach a settlement with Defendant City of New York (the "City"), and the case continued against the City. On September 3, 2025, Judge Abrams granted the City's motion for summary judgment in its entirety. (9/3/25 Op. & Order, ECF No. 99.)

Abrams entered an Order acknowledging the Settling Parties request that the Court seal its opinion and order approving settlement because they had agreed that the settlement would remain confidential and requiring the Settling Parties to file a letter justifying their requests to seal or redact Plaintiffs' motion for settlement, as well as the Court's decision approving it, in accordance with Second Circuit case law. (8/13/25 Order, ECF No. 92.)

Thereafter, Judge Abrams directed the parties to address the motion to seal to the undersigned consistent with the referral for general pretrial management. (8/22/25 Order, ECF No. 94.) The Settling Parties re-filed their motion to seal on August 25, 2025. (*See* 8/25/25 Jt. Ltr. Mot.) The same day, this Court directed the Settling Parties to (1) publicly file proposed redacted versions of Plaintiffs' Motion for Approval of Settlement and Judge Abrams' April 12, 2025 Memorandum Opinion and Order, and (2) file under seal unredacted versions of the same two documents highlighting the proposed redactions. (8/25/25 Order, ECF No. 96.) On August 29, 2025, the Settling Parties publicly filed the proposed redacted version and an unredacted version under seal. (*See* ECF Nos. 97 & 98.)

**LEGAL STANDARDS**

It is well settled that "[t]he public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted). A party seeking to seal documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). "Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First

Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013).

The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access. *See Lugosch*, 435 F.3d at 119. First, a court must determine whether the documents at issue are "judicial documents" to which the common law right of public access can attach. *See id.* "A 'judicial document' or 'judicial record' is a filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch*, 435 F.3d at 119).

Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. The weight given to the presumption of public access is determined by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*").

Third, the court must balance any "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050). "[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

"In addition to the common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). This approach considers "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* Even when a qualified First Amendment right of access to certain judicial documents exists, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.*

## DISCUSSION

As an initial matter, there is no dispute that Plaintiffs' Motion for Approval of Settlement and Judge Abrams' April 12, 2025 Memorandum Opinion and Order are judicial documents. *See Farris v. Avon Prods., Inc.*, No. 23-CV-02023 (LAK) (SN), 2024 WL 4441811, at *2 (S.D.N.Y. Oct. 7, 2024) ("[A]lthough in many—if not most—cases, a settlement agreement would not qualify as a judicial document, a settlement that is submitted for court approval is indisputably a document that is relevant to the performance of the judicial function and useful in the judicial process, and thus a judicial document subject to the presumption of access.") (cleaned up). The Settling Parties do not address the weight of the presumption to be applied, but other courts have found that "[d]ocuments submitted in connection with a motion for approval of a settlement are judicial records to which a strong presumption of access applies." *Wyatt v. Kozlowski*, No. 19-CV-00159

4

(EAW), 2025 WL 1298083, at *1 (W.D.N.Y. May 6, 2025). Nonetheless, the Settling Parties argue that Amtrak has demonstrated sufficient privacy and public policy concerns to overcome the presumption of access. (8/25/25 Jt. Ltr. Mot. at 2.)

When weighing privacy interests, courts should consider "the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Courts should also assess the "nature and degree of injury," paying heed to "the sensitivity of the information and the subject" but also to "how the person seeking access intends to use the information." *Id.* at 1051. As Judge Abrams previously explained, "[p]arties' agreement that materials should remain confidential is not, in itself, sufficient to justify sealing." (8/13/25 Order at 1 (citing *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017) ("[C]ourts in this district have repeatedly found that the preservation of such bargained-for confidentiality does not overcome the presumption of access to judicial documents.")). Nonetheless, some courts in this Circuit have approved limited redaction of settlement amounts from judicial documents in infant compromise cases. *See Savarese v. Cirrus Design Corp.*, No. 09-CV-01911 (JGK), 2010 WL 815027, at *1 (S.D.N.Y. Mar. 9, 2010); *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, No. 17-CV-00052 (BKS) (TWD), 2021 WL 2188167, at *4 (N.D.N.Y. May 28, 2021).

Having presided over the settlement conference, the Court finds that, like in *Hunter*, the circumstances of this particular case warrant limited redaction of certain financial information from the settlement agreement in order to protect legitimate privacy interests which outweigh the presumption of public access under both the common law and the First Amendment. *See Hunter*, 2021 WL 2188167, at *4. In reaching this determination, the Court has considered, among other things, the settlement amount. *See id.* ("The settlement amount itself may be one

relevant factor in determining whether, in a particular case, a plaintiff's privacy concerns regarding the settlement are significant and legitimate enough to overcome the usual presumption to public access."). Moreover, the redactions are narrowly tailored, as the law requires. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-02542 (VSB), 2023 WL 196134, at *6 (S.D.N.Y. Jan. 17, 2023).

## **CONCLUSION**

For the reasons stated above the Joint Letter Motion (ECF No. 95) is GRANTED.

**SO ORDERED.**

Dated:   New York, New York
         September 5, 2025

_____
STEWART D. AARON
United States Magistrate Judge